Good morning. Good morning, Your Honors. May it please the Court, my name is Megan Hoffman. I'm with the Federal Public Defender for the District of Nevada and I represent Michelle Taylor. I'm going to try to reserve two minutes for rebuttal if I can at the end. Thank you. Your Honors, this case presents that rare case of a life sentence that is grossly disproportionate to the crime. While the, we all acknowledge that the Supreme Court precedent on this topic is not of the clearest nature, what we do know in terms of habeas and 2254D purposes is that the courts, the reviewing court is required to compare the gravity of the offense and the severity of the sentence using objective factors. In this particular instance, and if the, if upon that analysis of the gravity versus the severity indicates an inference of disproportionality, then the courts proceed to the second and third steps of an analysis, which are the intra and intra-jurisdictional analyses of the, of the crime and the sentence. The court has not set forth a clear bright line about what type of objective factors the court may consider, but some that they have identified as appropriate factors are the primacy of the legislature indicating state interest in creating penological schemes, harm caused to the victim or to society, the nature of the crime, including the factual description of the crime as opposed to just the title of the crime. Recidivism, if the client does have prior criminal history or something that would indicate that this is an ongoing pattern, even the mental state of the defendant at the time are all objective factors that the courts have considered. And in this particular case, a review of the objective factors indicates that Ms. Taylor's sentence was indeed grossly disproportionate to the crime. The primacy of the legislature was one of the primary factors that Justice Kennedy identified in his Harmelin concurrence. And in this instance, the bill's sponsors indicated that the mandatory sentencing scheme prior to Ms. Taylor being convicted and sentenced in this matter, Nevada had allowed for a range of years of punishment rather than this mandatory tend to life for which the sentencing judge has no discretion. And at the time when the legislature was passing these, this change, this mandatory minimum, they indicated that it was really for the worst of the worst offenders. And later when one of the bill's co-sponsors was confronted with Ms. Taylor's case, he indicated that sometimes you aim for the high, not really realizing you're going to entrap someone like Mrs. Taylor within the sentencing structure. Counsel, I have great empathy for your client. I really do. The facts of this case are really very difficult. But given the law that we deal with, if you look at the intra-jurisdictional situation, I count one, two, three, four statutes from Nevada that call for life sentences, some with, some without parole, in situations that are even less aggravated than the one in this case. How do you respond to that? Your Honor, I think that an inter-analysis in terms of just in Nevada, that there are certain, there are quite a few. And the ones that we provided were ones that I found that were at least as serious, if not more so. And yet they had additional benefits on penalty. So in the same calculation, the same What do you mean they have additional benefits on penalty? So, Your Honor, for certain types of crimes, such as development of weapon of mass destruction, homicide by vessel, second-degree murder even, there are additional ones as well. The four I mentioned are all sexual assaults and crimes. I was focusing on those. If you don't mind, can we keep to those? Sure. Because the others are a little different genre. Sure. So in terms of Nevada, Nevada does have very heightened sentencing for sex crimes. And as I noted in our opening brief, my office has also challenged the sentences for sex assaults on children. In this particular instance, though, I believe that the sentence for life in Nevada is, that is true. On all of the sentences for sex assaults, they are a life tail, including for sentences with adults. Sex assault on adults is a 10 to life as well. It does not have a term of years. But I think the comparison here that Solomon and that Harmelin encouraged us to look at, we should look at those other crimes, such as the homicide or the second-degree murders. We can stick with the sexual for a moment. I also note that there are four other states that have indeterminate life sentences for offenses virtually identical to the ones for which your client has been convicted. I counted three, Your Honor. I counted Idaho, Montana, and Oklahoma have life. And some did have indeterminate sentences. It was really difficult to figure out what it would be. I would posit that four states does not, out of, you know, 50 states, is not something that across, you know, that tends to indicate that this is a sentence that is accepted. But does it make it? I think the term is unusual. We're talking about cruel and unusual punishment. I think reasonable people can disagree given the nature of this particular crime and what happened, whether it's an appropriate penalty. But under our system, elected representatives make these determinations. And as you know, I think it's Mr. Taylor or somebody, I forget, somebody who's really strongly on this issue in Nevada made repeated attempts to change these laws because he says we have to, in quotes, protect our children, in quotes. Whether you agree that this is the appropriate penalty or not, we can't strike this down unless it is cruel and unusual under the Supreme Court's case law. And on top of that, you have the AEDPA overlay, which, of course, colors all of our analysis. So while I empathize with you, what's your best argument that we should overturn this conviction? Well, if I can answer, I think there were two questions there, Your Honor. I think the first, in terms of that there are other states that have a life sentence, albeit I would posit that four does not tend to indicate that necessarily that it is unusual. Four out of 50 is a very small percentage. But in Solemn, the case that started kind of this analysis, that was a recidivism case. And we know that across the country there have been recidivist statutes since that time. And in Solemn's case, the Supreme Court did strike down his sentence. Yes, the legislature is entitled to make these determinations. But in that particular instance, the nature of the crime, the actual facts of what occurred were unusual and they were cruel in his case. And I posit that's what happened here as well. As to the Nevada Supreme Court's decision, I don't believe they're entitled to deference here. I do believe, and the additional research that I did in preparation for this argument, the Nevada Supreme Court imposed a subjective standard on Ms. Taylor to demonstrate that this case was not disproportionate. The Supreme Court precedent, although muddy, it's clear that they have to be based on objective standards. And the shock to conscience standard is subjective. It is one in which it has been roundly criticized in due process cases. And in this instance, not only did the Nevada Supreme Court impose a subjective shock to conscience standard, they also failed to conduct any kind of analysis. They merely stated, you know, the facts in Ms. Taylor's case and said under the facts, the statute says that's bad and that's why she gets a life sentence. There was no comparison about whether her actual case and crime met, you know, whether or not in comparison the 10-D life sentence was unusual. They made a conclusion that it was not disproportionate. They did, Your Honor, only because, but if you actually read the opinion, they said these were the facts and that under the statute this falls within the realm of those facts, and so we find it not disproportionate. There was actually no analysis to the facts of the crime and the sentence. And I see I have two minutes. If you have time, sure.  Thank you, Your Honor. Good morning. Good morning, Your Honors. May it please the Court. Lawrence Van Dyke on behalf of the State of Nevada. You're almost as tall as the former director Comey. You're a tall guy. I've been told I'm tall, Your Honor. So I think I kind of want to, I think this case is a little bit easier. And I understand your position, Judge Smith, in that there are some aspects of this that in some sense engender some sympathy, but that's if you focus on the life sentence part. And I want to reset this a little bit, because I think that that's a theme that's been throughout the briefs and it's a little bit misguided, especially in light of U.S. Supreme Court case law and also this Court's decisions. Michelle Taylor aggressively, fairly aggressively molested a 13-year-old boy. And it was a 13-year-old boy she didn't know the day before. She didn't know him until that day. She knew his mother, but she did not know him until he came over to her house that day. It's very likely, I think that it's very likely that she's going to spend 10 to 15 years, maybe maximum 20 years, in prison for that crime. And then she's going to be on lifetime parole for the rest of her life. Is that a word to analyze it? She has a lifetime sentence with the possibility of parole in 10 years. Yep. But the reality is unless she gets parole, she's in there for life. So for our purposes of Eighth Amendment analysis, what role, if any, should the possibility of parole play? So the U.S. Supreme Court, I think, has been actually, you know, as I think probably everybody recognizes, the U.S. Supreme Court has not been clear about much in this area of the law. But the U.S. Supreme Court has been clear about that, Your Honor. So if you look at the Rummel case, which was the 1980 case, kind of set this all off. And that was a 12-to-life sentence with, so like here, a 10-to-life, but a 12-to-life sentence. What the U.S. Supreme Court said is, because parole is an established variation on the imprisonment of convicted criminals, a proper assessment of Texas's treatment of Rummel could hardly ignore the possibility that he will not actually be in prison for the rest of his life. And then three years later, in 1983, in that Solemn case where the U.S. Supreme Court, I think it may be the only case where the Supreme Court has found a disproportionate, a grossly disproportionate sentence, what the U.S. Supreme Court did in Solemn is it did not overturn Rummel. As the Court is probably aware, this is one of those areas of the law where the U.S. Supreme Court has just been very closely divided. It's been either four 5-4 decisions or deeply fractured decisions, as we saw in the Hamlin case. In the Solemn case, it went from 5-4 one way to 5-4 the other way. And what the Court in Solemn said, it distinguished Rummel. It didn't overturn Rummel. And the Court's always, in later cases, been clear to point that out. And what it said was the sentence is far more severe in the Solemn case, it was talking about its case, in the Solemn case, than the life sentence that we considered in Rummel. Rummel was likely to have been eligible for parole within 12 years of his, of this initial confinement, a fact on which the Court relied heavily. And the Court did this. And if you look at the Ewing case, which is another deeply fractured case in the U.S. Supreme Court, if you look at the dissent there, Justice Breyer's dissent for four members of the Court, it very seriously emphasizes the fact that the, what they looked at was, quote, the difference in length of the real prison term. That is the first and critical factor from Solemn and Rummel, the term at issue in Rummel, which amounted in real terms to at least 10 or 12 years. And then if you look at what this Court, this Court did in Norris and, which was Judge Berzon's decision from 2010, and in the Morse case more recently from, which was Judge Gould and Judge Berzon, you see, too, these were cases that involved, they involved sexual offenses and gross disproportionality challenges. And you see, too, that they, Judge Berzon, for instance, in the Morse case talked about, said a life sentence is obviously more severe without parole than with it. So consistent with the Supreme Court. So actually, that's really important, Your Honors, because what's going to happen here is, we don't know, just like the Court didn't know in Rummel and it didn't know in Ewing how much time exactly the Petitioner was going to spend in prison. But we do know that she's eligible for parole in 10 years. We know that the Parole Board is very likely to see this, I think, the same way that Your Honor sees it, the same way that this is a... Is that true? Let's take it. This is not the same offense. But in California, for example, we have almost 800 people in jail with death sentences. Some have sought parole. And in almost every instance, regardless of the political party of the governor, nobody wants to let these people out. Because they don't want to be blamed politically for letting a murderer out. They've overturned the Parole Board. Do you know what the situation has been in Nevada in terms of somebody saying, well, the Parole Board let out this sexual predator, and the governor let it happen. Have you had anything like that? Have we had any? I'm not aware of any specific instance in Nevada where that fact pattern is happening. The only reason I raise this is because it goes to the reality of this sentence. Yeah, maybe he gets out in 10 years later. But we don't know that. It's to some degree a political decision. And neither did the Supreme Court in Rome. I want to emphasize that, Your Honor, because let me read again the language from Rome. Because parole is an established variation on the imprisonment of convicted criminals, a proper assessment of Texas's treatment of Rommel could hardly ignore the possibility that he will not actually be in prison for the rest of his life. And the same thing, I think, has to be taken into account here, just like the Supreme Court. That's why I just want to emphasize, because Ms. Taylor's entire argument turns on her focus on the life sentence aspect of that. And that's the thing that's engendering your sympathy, Your Honor. But it's important to recognize that this is a 10-to-life, just like Rommel was a 12-to-life, just like Ewing was a 25-to-life, just like the Morris case upheld last year, a 35-to-life sentence coming out of Nevada for sexual assault of a minor. So it was a slightly worse crime because it was sexual assault. The fact that the Nevada Supreme Court used the term shock to conscience, which, of course, is not found in the Eighth Amendment, contrary to established precedent? I don't think so. I think you say – I think EPA still applies, and here's why. If you look at the cases that – first of all, if you look at what the Nevada Supreme Court did is it cited the Harmelin case, which is exactly the same thing that has been cited by this Court in, I think, both of the Norris and Morris cases as the clearly established law, to the extent you can use that term with regard to any of the U.S. Supreme Courts. But it cited the Justice Kennedy-Harmelin concurrence, and it cited Solem, and then it goes on and applies and talks about the facts of this case, and then it does talk about the shock to the conscience from the Nevada Supreme Court's old case law, which cited to other older Nevada Supreme Court cases. If you look at the cases that those Nevada Supreme Court cases cite, those are old U.S. Supreme Court – very old U.S. Supreme Court cases before Rommel, but they are cases that were cited by the U.S. Supreme Court in the Solem case, if I recall correctly. So I don't think the Nevada Supreme Court was trying to set out some sort of new standard by using the words shock to the conscience. What the Nevada Supreme Court was basically saying was the same thing that Justice Kennedy and others have said at the U.S. Supreme Court, which is you only find disproportionate sentences in the, quote, extremely rare – rare cases. Shock to the conscience, extremely rare. I think that most people would probably say those are probably fairly similar standards, Your Honor. The fact that the Supreme Court didn't really discuss the facts that led it to say the sentence wasn't disproportionate, was that an improper or an misapplication of established Supreme Court precedent? I guess I'm having trouble understanding that argument, Your Honor, because I'm looking at an excerpt from the record, page 12, and it says, In this case, the State presented evidence to Taylor Straddle, E.E., 13-year-old boy, removed her shirt, placed his hand on her breast, asked him to have sex with her. It seems to me – Do they have to discuss the law, the other statutes in Nevada and the other penalties in other States? No, no. No, they don't, Your Honor. This Court hasn't done that. I see what you're saying. I'm sorry. No, they don't. They only have to reach that, as Justice Kennedy said, in the extremely rare instance. So Justice Kennedy didn't reach that in its Harmelin concurrence. This Court didn't reach it in either the Norris or the Morse case. So all the Nevada Supreme Court was doing was following the U.S. Supreme Court's case law and what this Court has done in not getting to that. And the reason they didn't get to that, Your Honor, is because it's just simply not – this is not – unless you look at it as essentially a life without parole case, which under the U.S. Supreme Court's precedence, you should not, because Rommel's very clear on that and so is Solem. If you recognize this as a ten-to-life case, it's not – this is not even close to the line. It's – you would never do that further. I'll close by giving one example. The Norris case from this Court from 2010 involved a very, very momentary touching of a minor on top of her clothing by a stranger. And the Court upheld a life without parole sentence, Your Honor, because it was a second offense, but he got life without parole, a second offense, and never even reached the second part of that, never got past the threshold question, Your Honor. I don't think this case does either. Thank you, Your Honors. Roberts. So we have some rebuttal time, counsel. Just very briefly, Your Honor. I think I tend to disagree somewhat on the – on what Rommel says on focus on life sentences. In Rommel, the Court noted that we agree with Rommel that his inability to enforce any right to parole precludes us from treating his life sentence as if it were equivalent to a 12-year sentence. It does discuss, however, also the – one of the differences and one of the reasons they ended up upholding Rommel's sentence was that in Texas, they had a relatively liberal policy of granting good time credits to its prisoners. Now, Nevada does not for someone with a life sentence. If they have a life sentence on the tail end, we call it on the back end, they are not entitled to good time credits. So she's not getting out early. She's not getting out with special treatment. She really does have to go through all of the jumps and hoops that Nevada requires for parole. And in addition to that, she has to go through a sexual – I can't remember the name of it, but it's essentially a sexual dangerousness assessment. And if she doesn't pass that, she's in forever. She's in prison until the end of her life. Counsel, what – again, since we have to review this under the umbrella of AEDPA, which prong of AEDPA do you think gives you the best shot to claim that we have the right to overturn this decision? You know, I think that this one is kind of a hybrid of D – it's obviously D-1. It's that the case law is – or that the Nevada Supreme Court's interpretation was an unreasonable application of U.S. Supreme Court law. And by doing – in that, I mean that they did identify the appropriate procedures, which is part of the unreasonable application. Supreme Court cases, do you tag to that? I think for all of them. I mean, they certainly – the Nevada Supreme Court identified Harmelin. I think they identified Solem. I'm not – I don't have any kind of quip with that. I'm not opposed to that. I think the difference here is that they did not actually meet those standards. They didn't answer the question posed in those cases that they have to do the appropriate assessment. And on the shock of the conscience analysis, they oppose – imposed a standard that does not exist in Eighth Amendment jurisprudence. And in fact, determining category – you know, society's standard is against the categorical rule is only on categorical cases such as the death penalty. It does not apply to term-of-year sentences. Thank you, Your Honor. Any other questions about my colleague? No. Thank you all for your argument. The case just argued is submitted.
judges: M. Smith, Nguyen, Restani